UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| R. DUNBAR,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:25-cv-172 |
| | ) | |
| FRANK J. BISIGNANO,[2] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of a decision of the

Commissioner of Social Security, filed by the plaintiff, R. Dunbar, on February 25, 2025. [DE

1]. For the following reasons, the decision of the Commissioner is **AFFIRMED**.

***Background***

In October 2020, Dunbar filed an application for Title XVI Supplemental Security

Income, alleging a disability onset date of August 1, 2014, which was later amended to the date

of the application, October 8, 2020. (Tr. 23). The claim was initially denied and then again upon

reconsideration. (Tr. 142–43). A hearing was first held before an ALJ in January 2022, and the

ALJ issued an unfavorable decision on March 14, 2022. (Tr. 107–32, 153–85). The Appeals

Council reviewed the decision and remanded the case on August 10, 2022. (Tr. 186). Following

a second hearing in January 2024, the ALJ issued another unfavorable decision. (Tr. 20). The

---

[1] To protect privacy, the plaintiff's full name will not be used in this Order.
[2] Frank Bisignano was confirmed as Commissioner on May 6, 2025. Pursuant to Rule 25(d) of the Federal
Rules of Civil Procedure, Frank Bisignano should be substituted as the defendant in this suit. No further
action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social
Security Act, 42 U.S.C. § 405(g).

Appeals Council denied Dunbar's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1).

Agency regulations set forth a five-step sequential evaluation process for evaluating a claim of disability. 20 C.F.R. § 416.920(a)(4)(i)–(v); *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014).

At step one, the ALJ found that Dunbar was not engaged in substantial gainful activity. (Tr. 26).

At step two, the ALJ determined that Dunbar had severe impairments of right knee chronic instability, right patella recurrent dislocation, lumbar spinal stenosis, depression, post-traumatic stress disorder, borderline personality disorder, and anxiety. (Tr. 26). The ALJ noted Dunbar's other non-severe impairments but found that they did not impose more than a mild limitation on her work ability. (Tr. 26).

At step three, the ALJ found that Dunbar's impairments did not meet the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 26–28). The ALJ considered the physical impairments under various Listing 1.01 categories, including Listing 1.15 (skeletal spine disorders), and Listing 1.16 (lumbar spinal stenosis), and Listing 1.18 (major joint abnormalities). Dunbar's diagnosis of complex regional pain syndrome was evaluated under Listing 14.09 (Inflammatory Arthritis), Listing 11.14 (Peripheral Neuropathy), Listing 1.01 (Category of Impairments, Musculoskeletal Disorders), and Listing 12.07 (Somatic symptom and related disorders). The ALJ then considered the severity of Dunbar's mental impairments under the criteria in Listing 12.04 (Depressive, bipolar and related disorders), Listing 12.06 (Anxiety and obsessive-compulsive disorders), Listing 12.08 (Personality and impulse-control disorders), and Listing 12.15 (Trauma-and stressor-related disorders).

At this stage, the ALJ considered the "paragraph B" criteria which required assessing Dunbar's ability in four areas of mental function, namely to "[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. pt. 404, subpt. P, app. 1. The ALJ found that Dunbar had a mild limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a moderate limitation in adapting or managing oneself. (Tr. 29–30).

Following step three, the ALJ assessed Dunbar's residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except he [sic] can stand and/or walk for two hours in an 8-hour workday, can occasionally climb stairs and ramps, with no climbing of ladders, ropes, or scaffolds, can engage in occasional balancing as defined in the Selected Characteristics of Occupations in the Dictionary of Occupational Titles, can engage in occasional stooping, kneeling, and crouching, with no crawling, cannot perform work requiring a specific production rate, such as assembly line work, can engage in no customer-service interaction with the general public, but otherwise can engage in occasional interaction with coworkers and supervisors, and can tolerate occasional and routine changes in work setting.

(Tr. 31).

At step four, the ALJ found that Dunbar had no past relevant work. (Tr. 56).

At step five, the ALJ considered Dunbar's RFC, age, education, and work experience to determine Dunbar's ability to work. The ALJ relied on a vocational expert's testimony to conclude that there were three jobs—inspector, sorter, and assembler—that existed in significant numbers in the national economy which Dunbar could perform. (Tr. 56–57). As a result, the ALJ found that Dunbar was not disabled, as defined in the Social Security Act. (Tr. 57).

3

## *Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); *Lothridge v. Saul*, 984 F.3d 1227, 1232 (7th Cir. 2021); *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence.)"; *Swiecichowski v. Dudek*, 113 F.4th 751, 756 (7th Cir. 2025); *Rabdeau v. Bisignano*, 155 F.4th 908, 912 (7th Cir. 2025) (quoting *Jarnutowski v. Kijakazi*, 48 F.4th 769,773 (7th Cir. 2022)). *Lincoln v. Bisignano*, 2026 WL 1097727 at *2 (7th Cir. Apr. 23, 2026). A reviewing court does not "reweigh the evidence or substitute [its] own judgment for that of the ALJ." *Id.* at 1121. Instead, the court's role is to "examine the ALJ's decision to determine whether it reflects a logical bridge from the evidence to the conclusions." *Id.*; *Lothridge*, 984 F.3d at 1233. To warrant reversal, the burden is on the claimant to "point to evidence compelling the conclusion that the adverse disability decision lacks substantial support in the record." *Morales v. O'Malley*, 103 F.4th 469, 470 (7th Cir. 2024).

Disability insurance benefits are available only to individuals who can establish a "disability" under the Social Security Act. The claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations enumerate the five-step sequential evaluation to be followed when

determining whether a claimant has met the burden of establishing disability. 20 C.F.R.

§ 416.920. The ALJ first considers whether the claimant is employed and "doing . . . substantial

gainful activity." 20 C.F.R. § 416.920(b). If she is, the claimant is not disabled, and the

evaluation process is over. If she is not, the ALJ next addresses whether the claimant has a

severe impairment or combination of impairments that "significantly limits . . . physical or

mental ability to do basic work activities." 20 C.F.R. § 416.920(c); *see Williams v. Colvin*, 757

F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the

claimant's impairments). Third, the ALJ determines whether that severe impairment meets any

of the impairments listed in the regulations. 20 C.F.R. § 401, pt. 404, subpt. P, app. 1. If it does,

then the impairment is acknowledged by the Commissioner to be conclusively disabling.

However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ

reviews the claimant's "residual functional capacity" and the physical and mental demands of

her past work. If, at this fourth step, the claimant can perform her past relevant work, she will be

found not disabled. 20 C.F.R. § 416.920(e). That said, if the claimant shows that her impairment

is so severe that she cannot engage in his past relevant work, then the burden of proof shifts to

the Commissioner to establish that the claimant, considering her age, education, job experience,

and functional capacity to work, is able to perform other work and that such work exists in the

national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1520(f), 416.920(f); *see Biestek v.*

*Berryhill,* 587 U.S. 97, 107-08 (2019) (upon the disability benefits applicant's request,

vocational expert's refusal to provide the private market-survey data underlying his opinion

about job availability does not categorically preclude the expert's testimony from counting as

"substantial evidence" but, instead, the inquiry is case-by-case).

      In asking the court to remand the ALJ's decision, Dunbar advances two arguments. First,

Dunbar contends that the ALJ failed to account for her moderate limitations in concentration, persistence, or pace (CPP) when calculating the RFC. [DE 18 at 6]. Second, Dunbar argues that the ALJ failed to include all of her supported physical limitations in the RFC. *Id*.

1. **The ALJ Considered Dunbar's Moderate CPP Limitations when Determining her RFC**

The ALJ's RFC finding is a key component of a Social Security case. The ALJ "need not use any 'magic words' in formulating a person's residual functional capacity." *Lothridge*, 943 F.3d at 1233; *Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020) ("The law does not require ALJs to use certain words, or to refrain from using others, to describe the pace at which a claimant is able to work."). On the other hand, the ALJ "must account for the 'totality of a claimant's limitations' in determining the proper RFC." *Id.* (quoting *Moreno v. Berryhill*, 882 F.3d 722 (7th Cir. 2018). Moreover, the Seventh Circuit's decisions repeatedly emphasize that this requires incorporating "even moderate limitations in concentration, persistence, or pace." *Lothridge*, 943 F.3d at 1233 (quoting *Crump v. Saul,* 932 F.3d 567, 570 (7th Cir. 2019)); *Martin*, 950 F.3d at 373. The ALJ must have "considered all limitations supported by record evidence." *Jozefyk v. Berryhill*, 923 F.3d 492, 497 (7th Cir. 2019). In *Martin*, the court affirmed the ALJ's decision against a claim that "the ALJ's RFC determination failed to translate her mental health symptoms into limitations related to [CPP]." *Martin*, 950 F.3d at 373. The court approved the ALJ's findings, explaining that the ALJ did not assume that certain restrictions "would account for her mental health impairments" but rather "tailored [claimant's] RFC to her CPP limitations." *Id.* at 374.

Dunbar argues the ALJ failed to account for her moderate limitations in CPP when making the RFC determination. Dunbar claims the ALJ accounted for her moderate limitations in

adapting or managing herself and in interacting with others, and considered her mild limitation in understanding, remembering, or applying information, but "says nothing with regard to [CPP]." [DE 18 at 12]. This characterization overlooks a significant portion of the ALJ's decision. The ALJ spent seven pages of the decision analyzing and considering the opinions of three medical experts in the case. (Tr. 48–54). The ALJ found Dr. John T. Heroldt's opinion "consistent with his examination findings and [] supported by the record as a whole that demonstrates moderate limitation in maintaining [CPP]." (Tr. 49). Based on Dr. Heroldt's opinion, the ALJ limited Dunbar to "no work requiring a specific production rate" but found that she could "manage occasional and routine changes in work setting." (Tr. 49).

The ALJ then considered the two opinions submitted by Dr. Robin E. Young, who first believed that Dunbar had a marked limitation in CPP and later increased this to an extreme limitation. (Tr. 49–52). The ALJ explained that Dr. Young's opinion was "persuasive in part," but specifically found that Dr. Young's position on the paragraph B criteria was not supported by Dr. Young's treatment records or Dunbar's daily activities. The ALJ further noted that Dr. Young's statements were inconsistent with each other and explained that the infrequency of Dunbar's therapy sessions and lack of more intensive treatments did not support Dr. Young's paragraph B findings. (Tr. 52). The ALJ supported this assessment by relying on the opinion set forth by Dr. James Brooks, who also noted that Dr. Young's position was not supported by the treatment records. (Tr. 50). The ALJ reaffirmed his previously stated position that Dunbar's limitation with pace was addressed by the production rate but explained that "[f]urther limitation as opined by Dr. Young, such as absenteeism or off-task behavior is not supported in the record or in the opinions of Dr. Heroldt, above, or Dr. Brooks, below." (Tr. 50–51). There are no "magic words" that the ALJ must cite, and the ALJ's detailed consideration of Dr. Young's

7

statements and explanation for why he found them to be inconsistent satisfies the "logical bridge" requirement. The ALJ addressed the pace limitations by limiting the RFC to include no specific production rate. The ALJ's explanation as to why limits for off-task behavior were unnecessary further demonstrates the consideration that was given to Dunbar's CPP limits.

The ALJ then analyzed Dr. Brooks's opinion. (Tr. 52). Dr. Brooks believed Dunbar had only a mild to moderate CPP limitation based on treatment notes that her memory was "good" and her concentration prior to the alleged onset date was "within normal limits." (Tr. 52). The ALJ incorporated the higher range of Dr. Brooks opinion into Dunbar's CPP, explaining that the moderate—rather than mild—CPP limit was warranted because the RFC "is the most the claimant can perform." (Tr. 53). This belies Dunbar's assertion that the ALJ said nothing with regards to her moderate CPP limitations.

Dunbar's belief that the ALJ only considered her moderation limitation in adapting and managing herself when imposing the production-rate limitation appears to come from the ALJ's consideration of the state agency's findings. (Tr. 53–54); [DE 18 at 11–12]. The state agency reached the same findings as the ALJ regarding Dunbar's moderate limitations in CPP. (Tr. 53). The state agency initially found Dunbar had only a mild limitation in adapting and managing herself, but upon reconsideration, the agency changed its assessment to a moderate limitation. (Tr. 53). As Dunbar highlights in her Complaint, the ALJ repeated his finding of a moderate limitation in adapting and managing herself. Contrary to Dunbar's assertion, however, the production-rate limitation was not "due to her 'moderate' limitation in adapting and managing herself." [DE 18 at 12]. Instead, the ALJ considered "the claimant's mental limitations in the 'paragraph B' criteria." (Tr. 54). The ALJ specifically repeated the "adapting and managing oneself" limitation—likely because of the state agency's inconsistency between mild and

moderate—but he then referred to all the paragraph B criteria, which includes CPP. (Tr. 54). Additionally, the ALJ's focus on adapting and managing does not negate the previous six pages considering the CPP limitations.

The remainder of Dunbar's argument on this point focuses on Dr. Young's opinions and the ALJ's alleged failure to incorporate them into the RFC. Again, the ALJ's decision shows that he properly "considered all limitations supported by record evidence." *Jozefyk*, 923 F.3d at 497. The ALJ cited a lengthy list of specific treatment records from Dr. Young to support his finding that Dunbar's mental limitations were less severe than Dr. Young indicated. (Tr. 50, 52). These treatment records constitute substantial evidence to support the ALJ's findings. As the ALJ noted, many of Dr. Young's treatment records indicated that Dunbar's mood, thought process, or behavior were unremarkable. (Tr. 1318–19, 1583, 1589, 1595, 1601, 1702–03, 1715–16, 1727–28).

The court in *Lothridge* explained that "[a]n ALJ need not address every piece of evidence, but she may not ignore entire swaths of it that point toward a finding of disability." *Lothridge*, 943 F.3d at 1234. Here, the ALJ's explanation clearly did not ignore swaths of the record but properly considered a difference in opinion between medical experts, explained his finding of a moderate CPP limitation, and addressed specific reasons for imposing limitations to production pace but not for absenteeism or off-task behavior. *Hess v. O'Malley*, 92 F.4th 671 (7th Cir. 2024) (explaining that the ALJ's limits on work with no production rate limits "did account for [concentration] limitations" because in an environment without production requirements "it would be less important . . . to stay concentrated"). The ALJ "did not take any . . . shortcuts" but rather "tailored [Dunbar's] RFC to [his] CPP limitations." *Martin*, 950 F.3d at 374 (affirming an ALJ's RFC that addressed CPP limitations using pace-related

limitations while declining to incorporate concentration or persistence limitations). The ALJ's assessment of Dunbar's CPP limitations in the RFC properly considered all relevant limitations and is supported by substantial evidence.

### 2. The ALJ Built a Logical Bridge in Determining Dunbar's Physical RFC

Dunbar also alleges that the ALJ failed to fully incorporate her physical limitations into the RFC. Dunbar first argues that the ALJ did not build a "logical bridge" from Dr. Gaeta's statements to his conclusions. [DE 18 at 16–17]. The basis for Dunbar's argument is that Dr. Gaeta's testimony was unclear regarding Dunbar's standing and walking limitations. *Id.* Contrary to Dunbar's assertions, however, Dr. Gaeta's testimony explicitly supports a four-hour limitation. In response to a question regarding Dunbar's limitations, Dr. Gaeta stated "based on the examination I think she would be able to, you know, stand, and/or walk for four hours during the course of a day." Dunbar casts doubt on this clear recommendation using Dr. Gaeta's next sentence, in which he said "I think some, you know, some indicator that she couldn't do the work that much." While this sentence is vague, Dunbar provides no reason to treat it as a direct repudiation of Dr. Gaeta's testimony from seconds prior. It is not this court's role to "reweigh the evidence or substitute our own judgment for that of the ALJ." *Moore*, 743 F.3d at 1121. The ALJ's reliance on Dr. Gaeta's explicit statement that Dunbar could stand for four hours constitutes a "logical bridge from the evidence to the conclusions." *Id.*

Furthermore, Dunbar fails to acknowledge that the ALJ went a step further in incorporating Dunbar's physical limits in the RFC. Despite Dr. Gaeta's testimony supporting a four-hour limit, the ALJ decided on a two-hour standing limit, explaining that "the claimant['s] more recent MRI does support . . . limitation to only two hours of standing and walking." (Tr. 55). Dunbar has the burden of showing that this more favorable RFC limitation of two hours

"was not supported by substantial evidence." *Morales*, 103 F.4th at 471. To satisfy that burden Dunbar "must demonstrate with references to evidence why the ALJ's determinations lack substantial support." *Id.* Dunbar has pointed to no such evidence.

Next, Dunbar argues that the ALJ did not properly account for her urinary incontinence in the RFC. In *Durr-Irving v. Colvin*, the Seventh Circuit remanded an ALJ's decision due to the failure to "discuss whether [the claimant's] testimony about her urinary incontinency was credible." *Durr-Irving v. Colvin*, 600 F. App'x 998, 1003 (7th Cir. 2015). The claimant in *Durr-Irving* provided evidence that she had worn adult diapers for years and testified that she required bathroom breaks every thirty minutes. *Id.* Despite this the ALJ "recounted Durr–Irving's testimony about how frequently she uses the bathroom and experiences bladder leakage but said nothing about that testimony when analyzing Irving's impairments; the ALJ didn't *discredit* the testimony but instead ignored it altogether." The court explained that "given the medical evidence, her testimony, and the vocational expert's opinion, the ALJ was required to discuss why the testimony and medical evidence concerning [claimant's] urinary incontinence did not affect the ALJ's RFC assessment." *Id.* at 1003. As in *Lothridge*, the court noted that "an ALJ need not mention every snippet of evidence" but "'must connect the evidence to the conclusion' and cannot 'ignore entire lines of contrary evidence.'" *Id.* (quoting *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012)).

Here, the ALJ did not make the errors that were present in *Durr-Irving*. Similar to *Durr-Irving*, the ALJ began by recounting Dunbar's statements about her incontinence. (Tr. 33, 35). The ALJ proceeded to consider Dr. Sarah Boudava's treatment of Dunbar, who found that Dunbar had an incontinence severity of 2. (Tr 42). Unlike *Durr-Irving*, however, the ALJ acknowledged Dunbar's "statements about the intensity, persistence, and limiting effects of her

physical symptoms" but found them inconsistent and disproportionate to the physical examinations. (Tr. 48). The ALJ pointed to Dunbar's treatment records explaining that her "most recent Urogynecology records note only a small amount of prolapse." (Tr. 48). This explanation, while brief, clearly distinguishes the ALJ's decision here from the ALJ in *Durr-Irving*. The ALJ did not "ignore [Dunbar's testimony] altogether but rather directly "discredit[ed] the testimony" as inconsistent and disproportionate. *Durr-Irving*, 600 F. App'x at 1003. The Seventh Circuit has repeatedly reaffirmed that "ALJs are 'subject to only the most minimal of articulation requirements.'" *Morales*, 103 F.4th at 471 (quoting *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024) ("Time and time again, we have emphasized that social-security adjudicators are subject to only the most minimal of articulation requirements.")). The ALJ met that requirement.

Finally, Dunbar returns to her previous point regarding the ALJ's assessment of Dr. Young's opinions. As discussed above, the ALJ found Dr. Young's opinion "consistent with and supported by the record in part, and [] therefore persuasive in part." (Tr. 50, 52). He then thoroughly explained his reasoning for rejecting Dr. Young's more severe "paragraph B" limitations based on Dunbar's daily activities, Dr. Young's treatment records, and the other medical opinions. (Tr. 50–52). Dunbar argues that the ALJ should have further "explained the persuasiveness of . . . the physical limitations Dr. Young opined." [DE 18 at 18]. But given the requirement that an ALJ cannot "ignore entire lines of contrary evidence," it is understandable for the ALJ to devote the brunt of his explanation to his disagreements with Dr. Young. *Arnett,* 676 F.3d at 592. Dunbar's position "misunderstands the burden she bears on appeal: It is not enough to criticize the ALJ's decision . . . . She must point to evidence compelling the conclusion that the adverse disability decision lacks substantial support in the record." *Morales*, 103 F.4th at 470. The ALJ found physical limitations that were either consistent with or more

restrictive than the state agency and Dr. Gaeta's findings. To overcome this, Dunbar "must demonstrate with references to evidence why the ALJ's determinations lack substantial support in the administrative record." *Id.* at 471.  Dunbar has not met this burden.

### *Conclusion*

The ALJ's RFC findings properly account for Dunbar's CPP limitations and physical limitations. The ALJ considered all the evidence supported by the record and built a logical bridge to his conclusion. For these reasons, the decision of the Commissioner is **AFFIRMED**.


ENTERED this 21st day of May, 2026.

/s/ Andrew P. Rodovich
United States Magistrate Judge